```
                                                    USDC SDNY
                                                    DOCUMENT
UNITED STATES DISTRICT COURT                        ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                       DOC #:_____
-------------------------------------------------------------X   DATE FILED: 05/02/2014
                                                   :
GREGORY J. MARCINSKI,                              :
                                                   :
                              Plaintiff,           :   13 Civ. 06022 (LGS)
                                                   :
             -against-                             :   OPINION AND ORDER
                                                   :
RBS CITIZENS BANK, N.A., et al.,                   :
                                                   :
                              Defendants.          :
-------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Gregory J. Marcinski, pro se, alleges that Defendants RBS Citizens, N.A. ("RBS") and Merrick Bank Corporation ("Merrick") engaged in unlawful credit reporting practices in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. ("FCRA"). Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, asserting that Plaintiff's claims are time barred by the FCRA. Defendants' motion is denied.

## BACKGROUND

### I. Factual Background

The following facts are taken from the Amended Complaint and pro se Plaintiff's papers in opposition to the motion, and are assumed to be true for purposes of this motion.

Plaintiff has been incarcerated since April 2000. In 2010, he learned that he was the victim of identity theft, and that credit cards had been applied for and issued in his name. He has never applied for or obtained a credit card during his incarceration.

After learning of the identity theft, Plaintiff requested a copy of his credit report from Equifax Information Services, LLC ("Equifax"), which he obtained on September 27, 2010

("First Equifax Report"). In reviewing his credit report, he discovered that two delinquent credit card accounts had been opened in his name at two banks, one with Defendant Merrick in May 2006, and the other with Defendant RBS in September 2007. Plaintiff submitted a notice of dispute to Equifax, alerting Equifax that he had not opened either the Merrick or the RBS credit card account ("First Equifax Notice"). On November 8, 2010, Plaintiff received notification from Equifax that both Merrick and RBS had verified that he had in fact opened the credit card accounts. Plaintiff subsequently notified Merrick and RBS directly that he had not opened credit card accounts with their respective companies, but did not receive any response.

On April 4, 2013, Plaintiff again requested and received a copy of his credit report from Equifax ("Second Equifax Report"). In reviewing the Second Equifax Report, Plaintiff discovered that the delinquent credit card accounts with RBS and Merrick were still listed on his credit history. On June 24, 2013, Plaintiff submitted a notice of dispute to Equifax ("Second Equifax Notice"), along with supporting documents, alerting Equifax that he had not applied for, obtained or used any credit card issued by RBS or Merrick, and that he had been incarcerated at the time the accounts were opened. On July 25, 2013, Plaintiff received word from Equifax that both RBS and Merrick had verified that the credit card accounts belonged to him and would remain on his credit record.

On August 6, 2013, Plaintiff requested and obtained a credit report from Trans Union LLC ("Trans Union Report"). The Trans Union Report likewise recorded the delinquent credit card accounts with Merrick and RBS. On August 15, 2013, Plaintiff submitted a notice of dispute to Trans Union ("Trans Union Notice"), along with supporting documents. As with the Equifax Notices, Plaintiff informed Trans Union that he had not applied for, obtained or used any credit card issued by RBS or Merrick, and that he had been incarcerated at the time the

accounts were opened.  On or around September 3, 2013, Trans Union informed Plaintiff that both RBS and Merrick had verified that Plaintiff had opened the accounts.

Plaintiff denies opening either of the credit card accounts.  Counts I and II of his Amended Complaint allege that RBS and Merrick, respectively, violated the FCRA by: (i) failing to conduct adequate investigations in connection with the Second Equifax Notice; (ii) reporting inaccurate, incomplete, false and misleading results in response to the Second Equifax Notice; and (iii) failing to notify Equifax that the information contained in the Second Equifax Report was inaccurate.  Counts III and IV of the Amended Complaint allege the same violations by RBS and Merrick, respectively, in connection with the Trans Union Notice and Report.  Plaintiff seeks compensatory damages, punitive damages and attorney's fees and costs.

## II.   Procedural History

Plaintiff filed his initial Complaint on August 21, 2013.  The Complaint alleged violations of the FCRA in connection with the First and Second Equifax Reports, but did not reference the Trans Union Report.  On November 15, 2013, Defendants filed a motion to dismiss the Complaint, arguing that Plaintiff's claims are time barred because he commenced the instant action more than two years after he first discovered the alleged FCRA violations through the First Equifax Report, received in September 2010.  On November 19, 2013, Plaintiff obtained leave to file an Amended Complaint in lieu of opposing Defendants' motion, and on November 21, 2013, filed his Amended Complaint.  The Amended Complaint omitted claims pertaining to the First Equifax Report, maintained the claims relating to the Second Equifax Report and added claims involving the Trans Union Report.  On December 3, 2013, Defendants filed the instant motion to dismiss, again asserting that Plaintiff's claims are time barred.

**STANDARD**

On a motion to dismiss, this Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While "'detailed factual allegations'" are not necessary, the pleading must be supported by more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (alteration in original) (quoting *Twombly*, 550 U.S. at 555), *cert. denied*, 133 S. Ct. 846 (2013). Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(a)(2).

Because the statute of limitations is an affirmative defense, Defendants carry the burden of showing that Plaintiff failed to plead timely claims. Dismissing claims on statute of limitations grounds at the complaint stage "is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999); *accord*

*S.E.C. v. Gabelli*, 653 F.3d 49, 60 (2d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1216 (2013).

In construing complaints by plaintiffs proceeding pro se, the Court "appl[ies] a more flexible standard to evaluate their sufficiency than [it] would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 139-40 (2d Cir. 2000); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). Thus, the Court is obligated to construe pro se pleadings with "'special solicitude,' interpreting the complaint to raise the 'strongest [claims] that [it] suggest[s].'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (alterations in original) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)).

## DISCUSSION

Defendants argue that the Amended Complaint must be dismissed because all of its claims fall outside of the two-year statute of limitations period prescribed by the FCRA. Defendants contend that the multiple instances of alleged non-compliance pertain to the same allegedly inaccurate credit information, and that the statute of limitations began to run either in September 2010, when Plaintiff first discovered the two fraudulent credit card accounts upon receipt of the First Equifax Report, or on November 8, 2010, when Plaintiff received notification from Equifax in response to the First Equifax Notice that both Merrick and RBS had verified that he had opened the credit card accounts.[1]

This argument is incorrect because, based on the unambiguous language of the FCRA as well as its stated purpose, the statute of limitations began to run for Counts I and II on July 25,

---

[1] Defendants argue the first date in their motion to dismiss, and the second date in their reply to Plaintiff's opposition to the motion to dismiss.

2013, and for Counts III and IV on September 3, 2013, when Plaintiff discovered that Defendants had failed to comply with their FCRA duties in connection with the Second Equifax Report and the Trans Union Report, respectively. Consequently, these claims were timely when the Amended Complaint was filed.

The FCRA provides that "[a]n action to enforce any liability created under this subchapter may be brought . . . not later than the earlier of – (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. The issue on this motion is whether Plaintiff's claims were brought within two years after Plaintiff discovered the violations that are the basis for liability.

Each of the four counts in the Amended Complaint alleges that Defendants violated three separate provisions of the FCRA relating to the investigative and reporting duties of a furnisher of credit information – like the Defendant banks here – in response to a notice of disputed information. Specifically, § 1681s-2(b)(1)(A) requires a furnisher of credit information to conduct an investigation with respect to disputed information; § 1681s-2(b)(1)(C) requires a furnisher of credit information to report the results of the investigation to the consumer reporting agency; and § 1681s-2(b)(1)(D) requires the furnisher to report any incomplete or inaccurate information discovered as a result of its investigation to all consumer reporting agencies to which it has furnished the incomplete or inaccurate information.

Given the FCRA's language, as well as its purpose, each alleged failure of Defendants to comply with their FCRA obligations constitutes a separate FCRA violation, even though the violations stem from the same allegedly false or inaccurate credit information. The FCRA explicitly states that the obligations of a furnisher of information arise upon receipt of notice of a

6

consumer's dispute from a credit reporting agency.  15 U.S.C. § 1681s-2(b)(1) ("After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a [furnisher of information] to a consumer reporting agency, [the furnisher of information] shall. . . ."). Thus, each separate notice of dispute triggers a duty to investigate the disputed information, regardless of whether the information has been previously disputed.  Consequently, the statutory period for Counts I and II began to run on July 25, 2013, when Plaintiff learned that Defendants had failed to comply with their FCRA duties in connection with the Second Equifax Report, and for Counts III and IV on September 3, 2013, when Plaintiff learned that Defendants had failed to comply with their FCRA duties in connection with the Trans Union Report.

This conclusion is consistent with the purpose of the FCRA.  In enacting the statute, Congress recognized a "need to ensure that those parties which controlled a consumer's credit history and therefore access to future credit 'exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.'"  *Broccuto v. Experian Info. Solutions, Inc.*, No. 07 CV 782, 2008 WL 1969222, at *4 (E.D.Va. May 6, 2008) (quoting 15 U.S.C. § 1681(a)(4)).  The FCRA expressly states that its purpose is to ensure consumer reporting procedures that are "fair and equitable to the consumer."  15 U.S.C. § 1681(b).  Were the Court to hold that the duties of a furnisher of credit lapse once an initial investigation is undertaken in regard to disputed information, it would contravene both the statutory language and the stated intent of the FCRA.

Although the Second Circuit has not addressed the issue, most federal courts considering the statute of limitations for claims alleging a failure to investigate under the FCRA have reached the same conclusion.  In *Broccuto*, 2008 WL 1969222, at *4, for example, the court denied the defendant bank's motion to dismiss the FCRA claims as untimely and held that

7

> [the FCRA's] construction creates a violation every time a consumer submits a dispute to a credit reporting agency and that agency or the relevant lender does not respond to the complaint as directed by the statute. The fact that the account or transactions questioned in the instant dispute may have also been the subject of a previous dispute does not mitigate the obligations of the bank or credit reporting agency. . . .

*Accord Maiteki v. Marten Transp. Ltd.*, No. 12 CV 2021, 2013 WL 6355923, at *4 (D. Colo. Dec. 4, 2013) ("[E]ach re-report of allegedly false information triggers a new duty to conduct a reasonable investigation, which in turn restarts the limitations period for an FCRA claim based on the failure to conduct a reasonable investigation."); *Young v. LVNV Funding LLC*, No. 12 CV 1180, 2013 WL 4551722, at *3 (E.D. Mo. Aug. 28, 2013) ("[E]ach re-report of inaccurate information, and each failure to conduct a reasonable investigation in response to a dispute, is a separate FCRA violation subject to its own statute of limitations."); *Larson v. Ford Credit*, No. 06-cv-1811, 2007 WL 1875989, at *4 (D. Minn. June 28, 2007) (same).

Courts considering the related question of whether each re-report of inaccurate or false information by a credit rating agency constitutes a distinct tort likewise have answered the question in the affirmative. *E.g. Hyde v. Hibernia Nat'l Bank in Jefferson Parish*, 861 F.2d 446, 450 (5th Cir. 1988), *cert. denied*, 491 U.S. 910 (1989) (reversing dismissal based on statute of limitations, stating "each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies"); *Campbell v. Chase Manhattan Bank, USA, N.A.*, No. Civ. A. 02-3489, 2005 WL 1514221, at *11 n.5 (D.N.J. June 27, 2005); *Lawrence v. TransUnion LLC*, 296 F. Supp. 2d 582, 587 (E.D. Pa. 2003). The Fifth Circuit has persuasively reasoned that in cases where the same credit information is misreported multiple times, the "failure of the consumer to mitigate his damages by filing suit when he is first injured, thus permitting a more widespread circulation of the credit information, should have a bearing only on the calculation of damages." *Hyde*, 861 F.2d at 450 (internal quotation marks omitted).

Defendants rely on case law supporting their argument and contrary to the cases cited above.  *See Hatten v. Experian Info. Solutions, Inc.*, No. 12-12236, 2013 WL 5179190, at *4 (E.D. Mich. Sept. 12, 2013); *Hancock v. Charter One Mortg.*, No. 07-15118, 2008 WL 2246042, at *2 (E.D. Mich. May 30, 2008); *Blackwell v. Capital One Bank*, No. 606 CV 066, 2008 WL 793476, at *3 (S.D. Ga. Mar. 25, 2008); *Bittick v. Experian Info. Solutions, Inc.*, 419 F. Supp. 2d 917, 919 (N.D. Tex. 2006).  The holdings in these cases, however, appear to be at odds with the language of the FCRA and its intent.

Accordingly, the Court finds that the claims in Plaintiff's Amended Complaint are timely and properly before the Court.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED.

The Clerk of Court is directed to mail a copy of this order to the pro se Plaintiff.

Dated: May 2, 2014
       New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**